I am Greg Tufel here on behalf of the Appellant International Custom Products, Inc. I had asked if I may to reserve 5 minutes for rebuttal. Just note your yellow light. Will do. Thank you. So the procedural protections of 19 U.S.C. section 1625C, they sound great in theory until you realize that as a practical matter the government is free to disregard them at least as much with impunity just so long as the duties that they impose in flagrant disregard of a binding advanced classification ruling are too high for and beyond the ability of the importer to pay. I mean it's this unconstitutional and untenable injustice that ICP begs this court to correct. So the CIT erred at dismissing ICP's complaint and in refusing to allow amendment. This court is all too familiar with the facts of this case, Judge Bryson especially. Customs failure to understand and apply its own rules led it to persecute an innocent and honest importer and put him out of business for no reason. Mr. Tufel, you sound like you're talking to a jury. I don't mean to your honor. You're dealing with law and you're dealing with a decision from trial court and how is that wrong? Sure and so the errors that first and foremost we challenge the constitutionality of a jurisdictional statutory scheme that allows the government to effectively deprive ICP in this case or any importer of a property interest in a ruling without due process of law. They're supposed to provide due process pursuant to 19 U.S.C. Section 1625C. You're concerned with the statute that says you have to pay before you can challenge? Right. I mean 28 U.S.C. Section 2637A is the statute that you referenced that requires the importer to pay before you can bring a protest. And the way this court has interpreted the statutory scheme and routed ICP and any other importer that finds itself in this unfortunate situation, it's like a maze with no end. There's no way an importer without enough money can challenge the deprivation of its property interest without due process, the due process that would seem to be guaranteed by 19 U.S.C. Section 1625C but is disregarded at will by the government. So long as you don't have enough money to pay, you can be deprived of your property interest in a ruling without notice, without opportunity to be heard, without any process at all. This is your as-applied challenge? As-applied, yes. So what would you say is the standard for being able to successfully invoke an as-applied constitutional challenge in these sorts of cases? Is it anytime someone can't afford it, then it becomes unconstitutional? What would you say is the legal standard? So the legal standard, first you have to show that you have a valid property interest. Right, and I'm not sure you do, but just getting past that, what is the standard for this kind of as-applied challenge? Obviously you say your client can't afford to pay the duty upfront. That's okay, but I mean is that all that needs to be done to satisfy holding the statute unconstitutional as applied in the circumstance? Is that it's because the importer can't afford it? Well, I think there's adequate case law showing that in situations like the Colorado case that we cite in the reply brief, that where a party who only by reason of inability to pay is denied any opportunity to be heard, that is considered a denial of due process. So I don't know that there's a case articulating a standard, but you know, but beyond the reasonable ability of the litigant to pay, it can't be a reason for denying a litigant the opportunity to be heard and notice an opportunity to be heard before it's deprived of its property interest. That's insufficient basis for denying someone their constitutional right to notice and an opportunity to be heard pursuant to Fifth Amendment before you deny them a property interest. What about the tax cases at the government sites that seem analogous here? The courts have held that due to the financial hardship of having to first pay the tax before you come into the court isn't necessarily unconstitutional. So actually it's a case of first impression. I've scoured the law, the cases that government sites don't actually hold that it's okay to deprive a party of a property interest without notice, without opportunity to be heard, or to impose beyond their ability to pay a financial requirement before you will hear it. And the tax cases, for example, Cheatham, the tax had already been paid. It wasn't an issue in the case, the Supreme Court case in Cheatham, it wasn't an issue in the case whether the importer that could afford to pay or not. And in the Flora case, they made passing reference to Cheatham and they didn't treat the issue as having been resolved by the court in Cheatham about whether if a situation presents where the government has set up a statutory scheme where only if you have enough money can you have an opportunity to be heard before your property interest is taken away from you, that that's constitutional. That issue has never been squarely before any court that I could find. What do you think is the, give me the best statement that you think and the best support you think there is for the proposition that there is a property interest in the initial ruling in this case, initial classification? Yeah, I would point to the Court of International Trade. They cited the Board of Regents versus Roth case. Well, the Board of Regents against Roth just says if you have a property interest, for example, in employment where you have a tenured employee, then that's a property interest. So what I'm looking to you for is not just the general law of property interests, okay, if you grant constitutional protection under the procedural due process principles, but what is your best authority for the proposition that this kind of classification conveys a property interest on the importer? I don't think there's a case out there holding specifically that an advanced classification ruling conveys property interest on the importer. It's by analogy to all the cases that have found property interest. We say the government in this case gives you an advanced classification ruling. You rely on that. There's a statutory scheme where if the government doesn't have unfettered discretion to just revoke it willy-nilly at will, they have to follow certain procedures. They have to meet certain standards to revoke an advanced classification ruling. That creates a reliance interest on the part of the reliance on their welfare benefits or a social security. Goldberg against Kelly, though, was very much influenced by the circumstances of the, I guess it was Ms. Kelly, where that has not been extended freely into areas of commercial practice. I mean, for example, if I go to the IRS and I ask for an advanced ruling as to whether a particular asset will be taxed at the, income will be taxed at the capital gains or at the ordinary income level, and they say capital gains, and I rely on that. I spend the money that I otherwise would have to devote to the taxes. And they change their mind. And they say, no, we made a mistake. It actually is ordinary income. I don't suppose that I have a property interest in that initial determination by the IRS, do I? That they would have to go through a notice and hearing process in order to decide. I'm not an expert on those cases, but if I vaguely recall that there is not, in the case of an IRS ruling, a property interest created, I think that's what the courts have held in those cases. I think the most analogous cases out there are probably the license cases, building permit cases. There's a commercial case for you where courts have held that you can have a property interest in a building permit, and that states can't just willy-nilly revoke a building permit. So there are analogous circumstances. It's certainly not limited to individuals. Corporations can have property interests, and those property interests are entitled to protection under the Fifth Amendment just like welfare recipients' property interests are protected. So I think the key difference in an IRS ruling versus an advanced classification ruling – and the advanced classification rules are designed to create reliance. They're designed to allow an importer to plan out its activities, to decide whether it's even going to import a product, how much it has to charge its customers in the U.S. There's all kinds of jobs and plans at stake that get upended if they don't follow that ruling that Congress recognized in enacting 1625C are very important interests to protect and need procedural protection. Once you give a ruling, you can't pull the rug out from under somebody. It's a little different when you're seeking a ruling from the IRS as to tax treatment. Yes, you may spend the money on something else. I guess there's that level of reliance. But it's not like you're planning out all your activities in foreseeable obvious reliance on a ruling by the IRS in that circumstance. Customs ultimately did go through the 1625C procedure, right? It did. And then ultimately revoked that 1999 ruling letter. It did. In 2006. Correct. So to what extent does that impact this case? I don't think it does. It certainly shows that they're fully capable of following the procedure and should follow the procedure. But that case doesn't impact this one. The fact that they ultimately got around to trying to follow 1625C doesn't really change the fact they didn't follow it. Because in this case, they revoked the ruling improperly and without notice and opportunity to be heard, very importantly. And then in the instance where they gave notice and an opportunity to be heard before they revoked it, they followed the procedure of 1625C. We don't have the same kind of problem in that case that we have here. Is it clear that the revocation applies or should apply, as you see it, equally to all the entries? That is to say that the lower classification that was ultimately adopted, if you could protest, if you had the assets to protest, it would be a laydown hand. Oh, yes. That you would simply walk in and say, here's the previous ruling, and you've revoked. Yes. We're done. Absolutely. In fact, in ICP-4… Is there anything about the state of the liquidation of the different entries that makes that a more difficult inquiry? Or would it – are the state of the liquidations such that if you could get into court, you would have a summary judgment in effect entered the next day? Yes, we would, Your Honor. And in fact, in ICP-4, the case where we won based on one entry, we didn't actually have a sample of that one entry. The way we proved that that one entry conformed with the ruling was to put evidence of all the entries of White Sauce, and they all conformed to the ruling. And by circumstantial inference, this entry also conformed. And there's never been any suggestion that the different entries are different – consist of different products? No, not the slightest evidence or suggestion of that ever by the government. And that certainly wasn't the case. We're well into your rebuttal time. Oh, I am. Thank you, Your Honor. Mr. Blades. Good morning, Your Honors. May the police report. This is not a case of constitutional dimension. As has been discussed by appellant's counsel, he brings up the fact that this is a case of first impression, suggesting that this is not a circumstance that somehow, as has been implied, that customs lays in wait for unsuspecting imports. Before you get into the merits of the constitutional argument, let me ask you the same question I asked your opposing counsel, which is if they did have the money to come up with the – they could pony up with however much they would have to put down in order to get this case into the posture of a judicial challenge, what would your defense be? At this point, I believe we would not have a defense. So you basically – what you've got here seems to me – correct me if this is not a fair characterization. You've got a case in which you would lose if they could get into court, but they can't get into court because they can't pay, in a sense, the entry fee. Is that a fair statement? Yes, it is, Your Honor, and if the court will indulge me. Why would this then not be the kind of case, for example, that the decision – a decision under, say, what is it, 1515d, a discretionary decision to reconsider the duty rate would not be – there wouldn't be a compelling argument in favor of that disposition? All right, and as I say, if the court will indulge me for just a few minutes, I'd like to walk through. Sure, but ultimately, I'd like you to address the 1515d question. Right, and actually, I think it's – if 1515d is important, so is 1501, which is the – that customs can voluntarily reliquidate. Okay. There are time limits, and there are 100 entries that are affected by these circumstances. If I can dispose of two of them quickly, two of the entries don't count here really. One, because it was not protested at all, and one, because when it was protested, the protest was untimely and rejected, and that was the end of those two. So there are 98 left. ICP-4, which has been brought up in the determination by the trial court, affirmed by this court, that customs had failed to follow 1625c, rendered the notice of action invalid. And ICP-4 involved one entry that ICP protested, paid the duties, and brought the court challenge. And as we've been discussing, one. About three months after ICP-4 was initially commenced, ICP protested in a series of protests, not all on the same day, but starting about November 29th. ICP-4 was filed August 28th, 2008. By the end of November, into December, into the next year, ICP protested 84 other entries. Those 84 other entries were suspended pending the outcome of ICP-4. The 13 entries we have at issue in this case were protested the day after ICP-4 was first filed. Three months later, near the end of November, before ICP started filing the other protests, customs denied that protest. Under 1501 and 1515d, there was an opportunity, a 90-day window, in which ICP could have come back and either asked customs to voluntarily reliquidate or suspend the suspension, or under 1515d, void the denial of the protest. Now, is that window, that 90-day window, statutory or regulatory? Regulatory. It's regulatory. Oh, I'm sorry. Statutory. 1501 and 1515d. 1501 and 1515, all right. Yes. Now, what's important here is that when ICP filed the protest that involved the 13 entries we're dealing with here, the day after ICP-4 was filed in court, ICP didn't alert customs that this protest was related to the cause of action in ICP-4. It didn't alert customs at any point during the next three months while ICP was considering the protest and ultimately denied it. After customs denied the protest, ICP did not alert customs to the fact that, oh, that protest is just like the other ones that have been suspended. It's related to what's going on in ICP-4. It didn't do anything within the statutory 90-day window to ask customs or to make a request under 1515d for the protest to be voided. It eventually became final and conclusive under 1514, and customs was left with nothing else to do. So what remained to ICP, there were plenty of opportunities for ICP to get itself out of this situation. But at that point, once the time had run, the only thing left for ICP to do was to bring a 1581 challenge in the Court of International Trade. Then we get to 2637 and the requirement that in order to do that, you have to pay the duties first. That's a requirement, longstanding requirement, as is discussed in our briefs and in the trial court's decisions and previously in some of this court's decisions. That's a situation that has always been part of the customs process in this country. It has consistently been recognized as a valid condition of the waiver of sovereign immunity, as has been discussed previously this morning. And importers do not have a substantive right to import, a substantive due process right to import. Importation is subject to the terms and conditions placed upon importation by the government. Well, I don't know that that's ICP's argument today that there's a right to import. It's a right that attaches, as I understand their argument, to the advance ruling so that when they rely on that, they are relying potentially to their prejudice in the way that they work out their business if customs without due process revokes the ruling on which they rely. So it's not quite the same as saying we have a right to import. It's saying we have a right to rely on a determination which is made by customs and a right to rely on that unless the proper procedures are followed. To the extent that's a distinction from what they're arguing, as I understand it, and that is that they're claiming their due process rights failed when they can't come up with the money to make the 2630. Oh, that's right. That's where the problem arose. But they're saying the reason they have a due process right, as I understand them, is because they have a property right in the ruling as opposed to a property right to import. I mean I don't have a property right to a job as a teacher, but once I have a job as a teacher, I have a property right to have – if I have tenure, I have a property right to have the due process procedures before firing me. I'm sorry. And here, as again has been discussed, an importer also does not have a substantive due process right to any particular classification or rate of duty. And so, yes, there is a process by which an importer can come in and ask customs for an advance ruling, perhaps even less onerous on the importer than Your Honor's previous example about the tax case. Because in the tax case, you actually – the IRS essentially knows all of the facts and maybe makes a mistake in its judgment. Here, the advance ruling is based upon ICP's description of the product. It is always customs responsibility duty to – when a product actually comes in, it can examine the product and see whether the product actually fits the description that was addressed in the advance ruling. Now, I realize we've already been through the 1625 processes in ICP-4, and I know what the rulings are there. But as a matter of fact, if the product that's being imported, when customs looks at it, customs believes does not match the product described for which the advance ruling applies, there is no prohibition on customs saying, no, that's not a proper ruling. And the proper classification of this product is something else. And then there is the process, the protest process, the 1581A process, in order to challenge that classification if you want to, which ICP has done in yet another case after this one. And so the fact that an importer has no substantive due process right to a particular ruling indicates that the ruling itself doesn't give them a property interest. It's simply an advance ruling suggesting what the classification will be if the product that's imported actually matches the product that the ruling applies to. This may cover ground that you've already covered, so you can short-circuit it if it does. But if you had been in the position of trying to tell ICP what to do at the time, way back when, in 2007, 2008, when these entries were being made, and you knew that your client did not have the money to file the requisite – pay the requisite duties, what would the course of action that you would have recommended been if you also knew that it had already either been adjudicated or that you had a very high likelihood of winning on the claim that the revocation of the advance ruling was invalid? Knowing what we know, which of course is not – presumably not everything that was affecting ICP at the time, I would have – and not to second-guess counsel and say, but I would have gotten to ICP-4 in ICP-1. I would have explained that in order to make this challenge, you need to bring an action under Section 1581A. And in order to do that, you're going to have to be able to pay the duties. Now, you said they can't pay the duties. Maybe they can't pay them on all of the entries. So they pay on one entry. They pay on one entry. They get the ruling that they ultimately got in ICP-4. But without – what I'm really trying to get at is if we have a scheme here which has an answer, it may be that the answer didn't emerge in this particular case because of a confluence of events. But if there is an answer, if there is a route to relief, that makes the scheme at least less constitutionally suspect. If there is no possible route to relief, then that places the burden more on the government to show why it's reasonable to effectively deprive people of an opportunity for judicial review. So what is the – is there a mechanism by which, let's say, starting off with getting one entry, paying the duty on one entry, getting a ruling in your favor, is there a way to adjudicate the rest of the entries without having to pay all of the duties on all of the other entries? And if so, what would it have been at that time? 1501, 1515d, or what? Well, before we even get there, as what happened with the other 84 entries relative to ICP-4, they can be suspended. When they were protested, the protests were suspended by Customs because Customs was aware that those protests raised the same issue that was being raised in ICP-4. What happened here, the breakdown with respect to this particular protest and the 13 entries involved, is that no one alerted Customs that this protest was related to ICP-4. If ICP had done that, it most likely would have been suspended just like the other 84 entries. What happened to the 84 entries? They were ultimately liquidated at the lower rate as dictated by ICP-4, the ruling of the trial court in this court. And had there been a suspension of the 13, what would have been the procedural mechanism by which there would have been an adjudication of the right rate? As with the other 84, they would have just, following the finality of ICP-4… Customs would have just said… Okay, we know what they should be liquidated at and we will liquidate them at the lower rate. But it's because these 13 were not suspended that they ultimately were liquidated that that puts the case in a different posture as you see it. Right, they ultimately became final and conclusive at the administrative level such that there wasn't anything else Customs could do about it. ICP did eventually ask Customs to suspend the protest in this liquidation, but it was well past the 90 days. The 90 days had run near the end of February. They didn't ask until May of 2008. And the other circumstance here was in ICP-4, ICP also asked the trial court in April of 2008, well after this protest had been adjudicated and become final at the administrative level. In April of 2008, ICP asked the trial court for a temporary restraining order and a preliminary injunction on all of the other entries, which would have included these 13. That was denied. The trial court correctly found that it didn't have jurisdiction over all of the other entries. Shortly after that, ICP asked Customs would it be able to suspend the protest on these 13 entries. Customs said it's final, it's well past the window for asking us to do that. We have no statutory or regulatory authority to do that. ICP then commenced this case, and that's where we are. One final question, really quickly. If there were a new entry tomorrow, what rate would Customs apply to it? The, if you will, the higher rate, because as was previously mentioned, Customs, 2005, Customs actually did do the 1625C process and changed the classification. Okay, so it has fixed the problem prospectively. Yes, that is in litigation, but right now. But for purposes of Customs' position. Right, new entries are subject to the new ruling. That's right. Is there anything in the record that explains what happened to the 84 entries and why, and also facts to establish that timing of these 13 entries, it wasn't properly lumped in with the 84? The record is, as far as I know, the joint appendix is the entire record. And as Your Honor is probably aware, it is populated essentially with the filings with the trial court, because this was all decided on motions. The timeline is there. The timeline is in the statement of facts in our brief. Page 10 identifies the four categories of entries that I mentioned. The two that don't really matter here. The one for ICP-4, the 13 in this case, and the other 84. Those other 84, as far as I know, there's nothing in the record about their subsequent re-liquidation, because that occurred after this case was finished at the trial court and there wasn't anything in the record. So I think in terms of if you were looking, for example, for the Customs documents that say these entries have been liquidated, that's not in the record. But the timeline is discussed in most of the filings and in our brief. Thank you, Mr. Blades. As you can see, your time has expired. Mr. Tufo? Thank you, Your Honor. We'll give you your full five minutes, because we've had added time for Mr. Blades. Thank you so much, Your Honor. Okay. So I want to direct first directly at this issue of, well, gosh, if they'd only asked us to suspend the entries, they could have solved all their problems. We didn't specifically ask for suspension of the 84 entries. They knew darn well, because of everything ICP did, they were far from sitting on their hands and sitting on their right. They were making as loud a noise as possible that they were protesting and not happy with the way that Customs was handling their entries of white sauce. They knew darn well that it was related to this case. They shouldn't have needed some special notification from the importer that it's related to the same white sauce, same importer as all the other cases. So the other thing is I think they're wrong on the law. 1515d doesn't put a time limit on when Customs can void a denial of a protest. The time limit they're talking about in 1501, I believe, points to something else. I wish I had the statutes right in front of me to tell you more on that. I didn't quite realize that was going to be as big an issue as it is here. In addition, of course, the government could refuse to suspend. So that's hardly much of a strong remedy. They were kind enough to suspend 84 entries, thank you, but 13 inexplicably they did not. Their only explanation for why they didn't is, oh gosh, you didn't tell us. You wanted those suspended too, and that's pretty outrageous. They were notified six ways to Sunday that ICP had problems with this. There's no formal procedure ICP could have invoked to more loudly proclaim how upset it was. And, I mean, they'd already been told by a court by that time that what they'd done was in contradiction of a binding advance ruling. This court had overturned that ruling but only on jurisdictional grounds. The writing was on the wall. They had every reason to know and didn't give any relief in respect to the 13 entries. So that leaves importers where we were and where we are, which is the government can, in the future, flagrantly disregard 1625C. Without any warning, without notice, an opportunity to be heard, they can effectively revoke an importer's ruling. And unless an importer has enough money to pay all the relevant entries, you can't get complete relief from that action. Under the statutory scheme, it all works together as applied. There's no route. There's no way to guarantee relief. You can rely on the government's good graces potentially to voluntarily suspend the entries, but that doesn't really satisfy the requirements of the Fifth Amendment in my opinion. You have to have a right to an opportunity to notice, an opportunity to be heard, and a statutory scheme that does not give parties a clear path to relief is inadequate under the Fifth Amendment. And it's not a simple matter of, well, the government gets to define the terms under which it consents to be sued. The Fifth Amendment says otherwise. The Fifth Amendment says the government shall not deprive you of the right to property without due process. And that's self-effectuating. If the statutory scheme fails to effectuate that, it's up to the court to effectuate that. And Congress wasn't free to design a statutory scheme that really leaves an importer at the mercy of customs in whether they do or don't follow notice and common procedures like 1625C. So for all the reasons we indicated in the brief, if there are no other questions, Your Honors, we ask that this court reverse and remand to the Court of International Trade to reinstate the complaint on the grounds that there is jurisdiction under 1581I to hear ICP's claims because there has to be jurisdiction somewhere to hear a claim of denial of our right to due process without notice and opportunity to be heard. Thank you. Thank you, Mr. Truffaut.